# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

| | |
|---|---|
| CHRISTOPHER TAYLOR,<br><br>Plaintiff,<br><br>vs.<br><br>GREENSKY, INC., GERALD BENJAMIN, JOEL BABBIT, GREGG FREISHTAT, DAVID ZALIK, and ARTHUR BACCI,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Taylor ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.  Plaintiff brings this action against GreenSky, Inc. ("GreenSky" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a)

and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to The Goldman Sachs Group, Inc. ("GS Group") through its subsidiaries Goldman Sachs Bank USA ("Bank"), Glacier Merger Sub 1, LLC ("Merger Sub 1") and Glacier Merger Sub 2, LLC ("Merger Sub 2") (the "Proposed Transaction").

2. On September 15, 2021, GreenSky announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each GreenSky stockholder will receive 0.03 shares of GS Group common stock for each share of GreenSky common stock they own.

3. On November 9, 2021, GreenSky filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) GreenSky management's and GS Group's financial projections; (ii) the financial analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), and the Special Committee of the Board's (Special Committee") financial advisor Piper Sandler & Co. ("Piper Sandler"); and (iii) J.P. Morgan's potential conflicts of interest. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is

forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have

received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Defendant GreenSky is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of GreenSky.

9. Defendant GreenSky is a Delaware corporation, with its principal executive offices located at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342. GreenSky's common stock trades on the Nasdaq Global Select Market under the ticker symbol "GSKY."

10. Defendant Gerald Benjamin has served as Chief Administrative Officer of the Company since February 2018, and Vice Chairman of the Board and a director since 2014.

11. Defendant Joel Babbit has served as a director of the Company since 2015.

12. Defendant Gregg Freishtat has served as a director of the Company since 2014.

13. Defendant David Zalik has served as Chief Executive Officer of the Company since co-founding GreenSky in 2006, and as a director since 2014.

14. Defendant Arthur Bacci has served as a director of the Company since April 2019.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

16. Relevant non-party GS Group is a leading global financial institution that delivers a broad range of financial services across investment banking, securities, investment management and consumer banking to a large and diversified client base that includes corporations, financial institutions, governments and individuals.  As of December 2020, GS Group had 40,500 employees working out of offices in over 35 countries.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

17. GreenSky is a leading technology company Powering Commerce at the Point of Sale for a growing ecosystem of merchants, consumers and banks. GreenSky's technology platform enables merchants to offer frictionless promotional payment options to consumers, driving increased sales volume and accelerated cash flow.  Banks leverage GreenSky's technology to provide loans to super-prime and

prime consumers nationwide. GreenSky currently services a $9 billion loan portfolio, and since GreenSky's inception, approximately 4 million consumers have financed more than $30 billion of commerce using GreenSky's paperless, real-time "apply and buy" technology.

18.  On November 4, 2021, the Company announced its third quarter 2021 financial results. For the third quarter of 2021, the Company recognized net income of $39.8 million compared to net income of $2.8 million for the same period of 2020, resulting in diluted earnings per share of $0.19, compared to diluted earnings per share of $0.01 in the third quarter of 2020. Adjusted EBITDA was a company record $58.3 million, an increase of 51% from $38.7 million in the third quarter of 2020.

19.  On September 15, 2021, GreenSky and GS Group issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> NEW YORK and ATLANTA, September 15, 2021 – The Goldman Sachs Group, Inc. ("Goldman Sachs") and GreenSky, Inc. ("GreenSky"; NASDAQ: GSKY) today announced that they have entered into a definitive agreement pursuant to which Goldman Sachs will acquire GreenSky, the largest fintech platform for home improvement consumer loan originations, in an all-stock transaction valued at approximately $2.24 billion. GreenSky's differentiated lending capabilities and market-leading merchant and consumer ecosystem will help accelerate the efforts of Goldman Sachs to create the consumer banking platform of the future, help tens of millions of customers take control of their financial lives and drive higher, more durable returns.
>
> The acquisition will enhance Goldman Sachs' ability to provide

consumers with the opportunity to save, spend, borrow and invest, and meet customers where they transact.  Since its founding, GreenSky has provided simple and transparent home improvement financing solutions for approximately four million customers.  GreenSky has a growing network of over 10,000 merchants and helps them accelerate their business by incorporating a seamless financing experience into their commerce flow.  Aligning GreenSky's unique capabilities and growing user base with the expanding products of Marcus by Goldman Sachs creates a compelling banking platform positioned for significant growth.

"We have been clear in our aspiration for Marcus to become the consumer banking platform of the future, and the acquisition of GreenSky advances this goal," said David M. Solomon, Chairman and CEO of Goldman Sachs.  "GreenSky and its talented team have built an impressive, cloud-native platform that will allow Marcus to reach a new and active set of merchants and customers and provide them with an expanding set of solutions.  We welcome the GreenSky team to the Goldman Sachs family."

"The GreenSky team and I are thrilled to be joining Goldman Sachs," said David Zalik, Chief Executive Officer of GreenSky.  "From GreenSky's inception, our mission has been to deliver exceptional value helping businesses grow and delight their customers.  In combination with Goldman Sachs, we're excited to continue delivering innovative point-of-sale payment solutions for our merchant partners and their customers on an accelerated basis."

In just five years, the consumer business of Goldman Sachs has made significant progress toward its goal to provide an integrated and customer-centric digital offering that enables customers to take control of their financial lives.  This transaction is consistent with that vision and Goldman Sachs' strategy to meet consumers through proprietary channels and through the ecosystems of leading companies with embedded technology.

**Transaction Details**

As part of the agreement, GreenSky stockholders will receive 0.03

shares of common stock of Goldman Sachs for each share of GreenSky Class A common stock.  Based on the closing share price of Goldman Sachs common stock as of September 14, 2021, this represents a per share price for GreenSky Class A common stock of $12.11 and an implied transaction value of approximately $2.24 billion.  In connection with the transaction, GreenSky's tax receivable agreement was amended to provide that no payments will be made in respect of or following the transaction; these payments would have had an approximate value of $446 million or $2.41 per share.

The Boards of Directors of Goldman Sachs and GreenSky have approved the transaction.  The Board of Directors of GreenSky, acting upon the unanimous recommendation of a special committee composed of independent directors of the Board, recommends that GreenSky stockholders approve the transaction and adopt the merger agreement.  The transaction, which is anticipated to close in the fourth quarter of 2021 or first quarter of 2022, is subject to approval by GreenSky stockholders, the receipt of required regulatory approvals, and satisfaction of other customary closing conditions.

Goldman Sachs & Co. LLC is serving as financial advisor and Sullivan & Cromwell LLP is serving as legal counsel to Goldman Sachs.

J.P. Morgan Securities LLC and Financial Technology Partners LP are serving as financial advisors and Cravath, Swaine & Moore LLP and Troutman Pepper Hamilton Sanders LLP are serving as legal counsel to GreenSky.

Piper Sandler & Co. is serving as financial advisor and Wilson Sonsini Goodrich & Rosati P.C. is serving as legal counsel to the special committee of the Board of Directors of GreenSky.

**The Proxy Misleads GreenSky Stockholders by Omitting Material Information**

20. On November 9, 2021, GreenSky filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince GreenSky's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the

omission of critical information concerning: (i) GreenSky management's and GS Group's financial projections; (ii) the financial analyses performed by the Company's financial advisor, J.P. Morgan, and Special Committee's financial advisor, Piper Sandler; and (iii) J.P. Morgan's potential conflicts of interest.

***Material Omissions Concerning GreenSky Management's and the GS Group's Financial Projections***

21. The Proxy omits material information regarding Company management's and GS Group's financial projections.

22. For example, with respect to GreenSky management's forecasts, the Proxy fails to disclose all line items underlying: (i) Gross Profit; (ii) Net Income; (iii) Adjusted EBITDA; and (iv) Unlevered Free Cash Flow.

23. Additionally, the Proxy sets forth that in performing its Net Present Value Analysis of the GS Group, Piper Sandler utilized mean research analyst net income, EPS and dividends per share estimates for GS Group for the years ending December 31, 2021, through December 31, 2023 ("Consensus GS Group Estimates"). *See* Proxy at 90. The Proxy, however, fails to disclose the Consensus GS Group Estimates.

24. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Certain Unaudited Financial Information" and "Opinion of Piper Sandler,

GreenSky Special Committee's Financial Advisor."

***Material Omissions Concerning J.P. Morgan's and Piper Sandler's Financial Analyses***

25. The Proxy fails to disclose material information concerning J.P. Morgan's and Piper Sandler's financial analyses.

26. The Proxy describes J.P. Morgan's and Piper Sandler's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of J.P. Morgan's and Piper Sandler's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, GreenSky's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Piper Sandler's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

27. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the companies analyzed by J.P. Morgan.

28. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the Company's terminal values; and (ii) the individual inputs and assumptions underlying the discount rate range of 11.0% to 13.0%.

29. With respect to Piper Sandler's *Comparable Company Analyses*, the

Proxy fails to disclose the individual multiples and financial metrics for each of the companies analyzed by Piper Sandler.

30. With respect to Piper Sandler's *Analysis of Precedent Transactions*, the Proxy fails to disclose the individual multiples and financial metrics for each of the transactions analyzed by Piper Sandler.

31. With respect to Piper Sandler's *Net Present Value Analyses*, the Proxy fails to disclose: (i) the Consensus GS Group Estimates utilized in the analysis of the GS Group; (ii) the terminal values resulting from the analyses; and (iii) the individual inputs and assumptions underlying the discount rate range of 10.0% to 14.0%, for the analysis of GreenSky class A common stock and 7.5% to 10.5%, for the analysis of GS Group common stock.

32. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Certain Unaudited Financial Information," "Opinion of J.P. Morgan, GreenSky's Financial Advisor," and "Opinion of Piper Sandler, GreenSky Special Committee's Financial Advisor."

***Material Omissions Concerning J.P. Morgan's Potential Conflicts of Interest***

33. The Proxy fails to disclose material information concerning J.P. Morgan's potential conflicts of interest.

34. The Proxy sets forth that "During the two-year period preceding delivery of its opinion, the aggregate fees recognized by J.P. Morgan from . . . GS Group were approximately $60 million." *Id.* at 81-82. The Proxy fails to disclose the specific services that J.P. Morgan provided to the GS Group in the two years preceding its fairness opinion.

35. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Transactions" and "Opinion of J.P. Morgan, GreenSky's Financial Advisor."

36. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made,

not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about GreenSky management's and GS Group's financial projections, the financial analyses performed by the Company's financial advisor, J.P. Morgan, and Special Committee's financial advisor, Piper Sandler and J.P. Morgan's potential conflicts of interest. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is

corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of GreenSky within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GreenSky, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and,

therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, GreenSky's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of GreenSky, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 29, 2021        **WEISSLAW LLP**

/s/ Michael A. Rogovin
Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com

**OF COUNSEL:**        *Attorneys for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*